U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

AUG - 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____
              DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **HUEY P. KIRKPATRICK, ET AL.** | : | **DOCKET NO. 2:05 CV 2132** |
| **VS.** | : | **JUDGE MINALDI** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Presently before the court is a Motion to Dismiss [doc. 12] the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by the United States of America. The plaintiffs filed an opposition and the United States filed a reply.

### Facts

This lawsuit is brought under the Federal Tort Claims Act ("FTCA"). 28 U.S.C.A. §§ 1346(b) and 2671 *et seq.*

This claim arises from an accident on October 23, 2003 at the Peason Ridge firing range at Fort Polk, Louisiana. The decedent, Travis Kevin Kirkpatrick ("Kirkpatrick"), was employed by AECOM Governmental Services Inc. ("AGS") as an Electronic Tech II Range Specialist and was assigned to Fort Polk, Louisiana.

At the time of the accident, the United States Army had entered into a contract with AGS. AGS is an independent contractor. The contract provided that AGS operate and maintain live-fire facilities that were required to support the training of the military personnel at Fort Polk. Kirkpatrick was an employee of AGS carrying out the terms of this contract at the time this accident occurred.

AGS personnel trained and supervised Kirkpatrick in the proper set-up of the M27 Anti-Tank Guided Missile Simulator ("smokey").[1]

The contract between the parties required that AGS personnel perform certain duties with respect to the live fire range. ¶ 5.15.3 of the contract addresses the live fire range (including the Peason Ridge area) and ¶5.15.3.1.3 addresses the set-up and inspection of live fire maneuvers. Pursuant to that provision in the contract, AGS personnel were required to perform operational tests on the range facilities scheduled for use at least two hours prior to the designated firing time. In addition, the contract required that all live fire facilities have a walk-through of the scheduled range facility the day prior to the scheduled occupation. A final inspection "shall be completed" by AGS, not by members of the military, thirty minutes prior to "Hot time."[2] "Hot time", as defined in AR 385-63, is "a firing condition where authorization to fire a weapon system has been given by the installation control office."[3]

After Kirkpatrick was hired by AGS, the Range Operations Lead Man, John B. Jansen ("Jansen"), provided Kirkpatrick, as well as five other newly hired personnel, with orientation to various pyrotechnics. The training involved demonstrations of how to fire projectiles and their effects on units conducting lanes-training exercises. The training also included warnings about the possibility of misfires and accidents as well as recommendations on their avoidance. Finally, the

---

[1]    Declaration of John B. Jansen, Gvt. Ex. 1.

[2]    Contract between AGS and the United States Army, pages 235-251, accompanied by the declaration of Russel Guillot, Gvt. Ex. 2

[3]    AR 385-63, Govt. Ex. 5.

specialized training was provided on the M27 Anti-Tank Guided Missile Simulator ("smokey").[4]

In order to properly fire a smokey, there was an eight-step process that was taught by Jansen to new target operators.  This process is as follows: (1) cut a 2" x 2" stick in half; (2)pound one end into the ground until it is sturdy; (3) angle the other stick off the first at a 45 degree angle; (4) fasten the two sticks together with two screws so the structure would look similar to an "L" formation; (5) cut the end of the angled stick to a point where its diameter accommodates the launching portion of the smokey; (6) attach an electrical match; (7) tape a wire down the stick to a receiver; and (8) attach the smokey to the stick.  Jansen trained Kirkpatrick in each of these steps and he also provided warnings to Kirkpatrick that the smokey may fire sporadically by going straight at the person firing it, shooting in circles or firing in the opposite direction.[5]

Prior to the date of the accident, Jansen observed Kirkpatrick firing smokeys on two or three occasions without incident.  In addition, Kirkpatrick had set up smokeys properly on five or six occasions and he had also watched others properly set-up smokeys on at least six to eight occasions. Prior to the accident, Kirkpatrick had never been injured setting up smokeys or firing them.[6]

At some point in the first five weeks after Kirkpatrick's hire, Jansen testified that he witnessed Kirkpatrick engaging in an unsafe act that deviated from his training.  Jansen witnessed Kirkpatrick setting up a smokey with just a pine branch and mounting it on the side of a wooden truck on the range rather than using the eight step process he had learned.  Jansen immediately went to the area, called in all of the other target operators and instituted retraining and corrective

---

[4]     Gvt. Ex. 1.

[5]     Declaration of John B. Jansen, Gvt. Ex. 1.

[6]     *Id.*

3

instruction until Kirkpatrick correctly assembled the smokey launcher as instructed.[7]

On the day of the accident, Jansen accompanied Kirkpatrick to set up sound effects in the exact area where Kirkpatrick had assembled the rocket launchers.  Jansen inspected the area to ensure that the rockets were pointed upward in a 45 degree angle.[8]

Jansen met with Kirkpatrick after all of the pyrotechnics at his area had been assembled. Kirkpatrick informed Jansen that aside from earlier problems with the pop-up targets, which had been corrected, his area was ready for the exercise.  Kirkpatrick set up the area by himself on the night of the accident.

On the night of the accident, Kirkpatrick fired the smokey in question.  He was approximately 75 meters away from the smokey.  The smokey came directly at Kirkpatrick and hit him in the face, striking above his upper lip on the right side of his nose and causing traumatic injuries.  Kirkpatrick fell back and his face was on fire.[9]  Kirkpatrick died instantly as a result of this accident.[10]

After reviewing the scene following the accident, Jansen determined that Kirkpatrick had again set up the smokey with a tree branch, not in the manner in which he had been instructed.  In Jansen's opinion, this was a completely unsafe manner in which to set up the smokeys and completed deviated from Kirkpatrick's training.[11]

---

[7]      *Id.*

[8]      *Id.*

[9]      Statement of SFC Michael Howle, October 23, 2003, Govt. Ex. 3.

[10]      Deposition of Dr. Osea, pp. 17-21, Govt. Ex. 4.

[11]      *Id.*

4

Rule 12(b)(1)

Lack of subject matter jurisdiction may be found on any one of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[12] In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.[13]

Law

The United States is immune from suit unless it consents to be sued.[14] "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit."[15] The Supreme Court "has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."

The Federal Tort Claims Act ("FTCA"),  waives the United States' sovereign immunity for personal injuries "caused by the negligent or wrongful act or omission of any employee" of the

---

[12]     *Robinson v. TCI/US West Communications, Inc.,* 117 F.3d 900 (5th Cir. 1997), citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

[13]     *Johnson v. Aramco Servs. Co.,* 2006 WL 45849, at *1 (5th Cir. Jan. 10, 2006) (unpublished) (internal citations and quotations omitted).

[14]     *United States v. Testan,* 424 U.S. 392, 399 (1976).

[15]     *Id.* (internal citations and quotations omitted).

5

United States acting in the course and scope of his duties.[16] Under the FTCA, the United States is liable in damages to the same extent a private person would be liable for the same negligent act or omission under the law of the state in which the act or omission occurred.[17] Waivers of sovereign immunity are to be narrowly construed in favor of the government.[18]

To impose liability under La. Civ.Code art. 2315 for negligence, Louisiana courts undertake a duty-risk analysis. Under the duty-risk analysis, a plaintiff must prove:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damages element).[19]

In their original complaint, the plaintiffs allege that Kirkpatrick was instructed by the United States Army to set up live fire facilities to support the training of military personnel at Fort Polk.[20] The Declaration by Jansen, however, establishes evidence that Kirkpatrick was actually hired by and trained by AGS personnel.[21] The Declaration by Russel Guillot[22] establishes that AGS was an

---

[16]    28 U.S.C. § 1346(b); *Metro. Life Ins. Co. v. Atkins,* 225 F.3d 510, 512 (5th Cir.2000).

[17]    28 U.S.C. § 1346(b); *Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993).

[18]    *Lane v. Pena,* 518 U.S. 187, 192 (1996).

[19]    *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. Partnership,* 342 F.3d 416, 419 (C.A.5 (La.), 2003) *citing  Pinsonneault v. Merchants & Farmers Bank & Trust Co.,* 816 So.2d 270, 275-76 (La.2002).

[20]    Complaint ¶ 8.

[21]    Declaration of John B. Jansen, Gvt. Ex. 1.

[22]    Govt. ex. 2.

independent contractor.  There is no evidence that Kirkpatrick was an employee of the United States.

The plaintiffs allege that the United States had the duty to do a dry run prior to the live wire exercises.[23]  The plaintiffs also assert that the United States Army has a non-delegable or affirmative duty to insure that their equipment is properly maintained, managed and utilized.  The plaintiffs have introduced no evidence that  the United States had a duty in this case.  Therefore, the plaintiffs have failed to meet the first prong of the duty-risk test.

Furthermore, Kirkpatrick was en employee of AGS and was trained by AGS personnel.  AGS had the duty to oversee the live ammunition firings.  Kirkpatrick deviated from his training and this deviation caused  his death.   Any breach of duty was by AGS employees, not Government employees.

Additionally, the government argues that the discretionary function exception to the FTCA applies to the decision to contract with AGS and to delegate to AGS certain duties, including training and performing walk-throughs prior to the firing of live munitions on the live-fire range at Fort Polk.[24]

Under the FTCA, the government has waived sovereign immunity with regard to suits based on the alleged negligent acts and omissions of its employees. That waiver, however, is limited. The United States has articulated certain exceptions to its consent to be sued in this area. Particularly

---

[23]	The plaintiffs make this allegation, but provide no authority.  Such bare assertions are not sufficient to rebut the presumption in favor of the Government. *Montez vex rel. Estate of Hearlson v. U.S.*, 359 F.3d 392, 399 (6th Cir. 2004).  The plaintiff provides no statute or regulation that limits the discretion of military officers in the manner and location in which soldiers are trained for combat.

[24]	28 U.S.C. §2680(a).

7

relevant to this action, the waiver of immunity does not extend to "[a]ny claim based upon ... [a government employee's] failure to exercise or perform a discretionary function...." 28 U.S.C.A. § 2680(a). If the government's conduct falls within the discretionary function exception to the FTCA, a suit complaining of that action must be dismissed for lack of subject matter jurisdiction.[26]

The Supreme Court has set forth a two-part test to determine whether the discretionary function exception applies, thereby barring the claim.[27] For the exception to apply, the first prong requires that the challenged governmental action be the product of "judgment or choice."[28]  Under this prong, we determine whether a statute, regulation, or policy mandates a specific course of action.[29]  If such a mandate exists, the discretionary function exception does not apply and the claim may move forward. When no mandate exists, however, the governmental action is considered discretionary and the first prong is satisfied.

The second prong requires that the judgment or choice be based on "considerations of public policy."[30] Under this prong, we determine whether the judgment is "grounded in social, economic,

---

[26]     See Buchanan v. United States, 915 F.2d 969, 970 (5th Cir.1990).

[27]     See Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988).

[28]     United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991).

[29]     Id.

[30]     Id. at 323, 111 S.Ct. at 1274 (quoting Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1959).

or political policy."[30] If the judgment of the governmental official is based on any of these policy considerations, then the discretionary function exemption applies and the claim is barred.[31]

Issues of negligence are irrelevant to the discretionary function inquiry.[32] It is the plaintiffs' burden to identify with specificity the mandatory statutes, regulations, or directives that have allegedly been violated.[33]

Range safety is addressed in Army Regulation 385-63[34]. The regulation requires that the Army establish a range safety program. Regulation 385-63 does not require the Army to perform a walk-through prior to live fire, to determine the possible path of the projectiles, to train or to inform personnel about the possibility of misfire. According to the contract between AGS and the Army, the Army, pursuant to the discretionary function, brought in trained and qualified range personnel to train Kirkpatrick. This decision was discretionary in nature and was within the discretion provided by the applicable statutes and regulations.[35]

---

[30]  *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660).

[31]  Garza v. U.S. 161 Fed.Appx. 341, *343, 2005 WL 3478009, **1 (C.A.5 (Tex. (C.A.5 (Tex.),2005)

[32]  *In re Glacier Bay*, 71 F.3d 1447, 1451 (9ᵗʰ Cir. 1995).

[33]  *United States v. Gaubert*, 499 U.S. 315, 324-325 (1991).

[34]  Govt. ex. 5.

[35]  *See Guile v. United States,* 422 F.3d 221, 228-31 (5th Cir.2005) (holding that the United States Army's decision to hire a health care organization to provide psychiatric services and its decision to supervise and how closely to supervise the organization's work were discretionary in nature); *ALX El Dorado, Inc. v. Sw. Sav. & Loan,* 36 F.3d 409, 410-12 (5th Cir.1994) (holding that the federal government's supervision of financial institutions under the receivership of the

Accordingly, because the plaintiffs have not established a breach of duty by the defendant and because the discretionary function exception to the FTCA applies, the defendant's Motion to Dismiss pursuant to Rule 12(b)(1), lack of subject matter jurisdiction, will be granted.

Lake Charles, Louisiana, this ___3___ day of  August, 2007.


PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

Federal Savings and Loan Insurance Corporation was a discretionary); see *Hix v. U.S. Army Corps. of Engineers,* 155 Fed.Appx. 121, 127, 2005 WL 3067906, **4 (C.A.5 (Tex. (C.A.5 (Tex.), 2005).